AUGUSTUS P. COOKE, Appellant, *v.* EMERSON E. DAVIS, Respondent.

A contract to deliver or receive either of the two recognized kinds of currency (*i. e.*, coin or legal tender notes) at a price expressed in dollars or fractions of dollars, or at a specified percentage, is to be construed as meaning that the price is payable in the other currency.

Defendant contracted to deliver to C., plaintiff's assignor, $10,000 "current funds of the United States" at fifteen cents on the dollar in ten months from date. *Held*, that the contract was to deliver $10,000 legal tender notes for $1,500 in coin; that the contract was valid, and for a breach thereof defendant was liable.

(Argued May 21, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff at circuit.

This action was brought to recover damages for the breach by defendant of the following contract in writing:

           "*August 5th,* 1864.

"E. E. Davis agrees to deliver to T. Cowen $10,000 current funds of the United States at fifteen cents on the dollar, to be delivered in ten months from this date. T. Cowen agrees to take the above $10,000 as above.

                 "E. E. DAVIS.
                 "T. COWEN."

This contract was assigned to the plaintiff December 22d, 1864. The complaint set forth the contract, assignment, tender and the breach, and asked for damages.

Upon the trial the writing and assignment were proved and offered in evidence. The defendant objected, and the writing was excluded on the ground that it evidenced only a contract for the exchange of $1,500 in legal tender currency for $10,000 of the same currency, and was therefore void for want of consideration, to which ruling and decision the plaintiff excepted. The plaintiff asked to have the writing received in evidence, and that the question be submitted to the jury as to the intent and meaning of the contract, which offer was rejected by the court, and plaintiff excepted. The plaintiff offered to prove that the term "fifteen cents," used in the contract, meant fifteen cents in coin, which offer was rejected by the court, and the plaintiff excepted. Thereupon the court nonsuited the plaintiff upon the ground stated for the exclusion of the said writing, and plaintiff excepted.

*Martin W. Cooke* for the appellant. The contract should be construed as an agreement to exchange $10,000 legal tender note dollars for $1,500 in coin. (*Tribilcock* v. *Wilson,* 12 Wal., 687, 695, 696; *Earl of Clanrickard's Case,* Hob., 277; *Pugh* v. *Leeds,* Cowp., 714, 717; *Wallis* v. *Bailey,* 49 N. Y., 464, 469; *Lane County* v. *Oregon,* 7 Wal., 71, 75; 12 Stat. at Large, 370, 719, § 4; *Bronson* v. *Rhodes,* 7 Wal., 229–251; *Crysler* v. *Renois,* 43 N. Y., 209; *Kellogg* v. *Sweeney,*

46 id., 291; *Hockin* v. *Cooke*, 4 T. R., 314.) The contract thus construed was valid. (12 Stat. at Large, 370, 719, § 4; 14 id., 147; *Tribilcock* v. *Wilson*, 12 Wal., 687, 695; *Bk.* v. *Suprs.*, 7 Wal., 26 [reversing S. C., 37 N. Y., 21]; *Chang Kee* v. *U. S.*, 3 id., 320; 2 R. S., 5th ed., 980.) A contract should be construed most strictly against the party who executes it. (*Chapman* v. *Dalton*, Plowden, 285; 2 Coke, 35; Coke's Lit., 183; 3 Bos. & Pul., 403; 32 N. Y., 413; 56 Barb., 25.) The court erred in refusing to allow plaintiff to prove the meaning of the word " cent," as used in the contract, and in refusing to allow the question to go to the jury. (*Brown* v. *Brown*, 34 Barb., 533, 536; *Waldron* v. *Willard*, 17 N. Y., 468; *Dodge* v. *Gardiner*, 31 id., 239; *Goodrich* v. *Stevens*, 5 Lans., 230; Greenl. on Ev., 10th ed., § 280, note 4, p. 390.) The contract was not a wager. (Bouvier's L. Dict., title " Wager;" Burrell's L. Dict., title " Wager.")

*Geo. W. Miller* for the respondent. The contract was void for want of consideration. (*The Legal Tender Cases*, 12 Wal., 457.) The court properly refused to allow plaintiff to change the terms of the contract by parol evidence. (*Bush* v. *Tilley*, 49 Barb., 599; *Buckley* v. *Bentley*, 48 id., 283; 12 Wal., 457.)

RAPALLO, J. We cannot find room for any doubt as to the meaning of the parties to the agreement of August 5, 1864. At the time it was made, there existed two kinds of currency. One was coin and the other notes of the United States government, known as legal tender notes. These two currencies had different relative values, and parties were at liberty to contract for payments in either coin or paper currency (43 N. Y., 209; 12 Wall., 687), or to exchange one for the other at different rates. The government itself was authorized by law to enter into those transactions (act of March 19, 1862, 12 Stat. at Large, 370), and contracts of that description, made by individuals, were required by act of Congress to be in writing. (Act of March 3, 1863,

12 Stat. at Large, 719, § 4). Contracts to receive or deliver either description of currency at a price expressed in dollars or fractions of dollars, or at a specified percentage, must, of necessity, be construed as payable in the other currency; otherwise they would be wholly insensible. It is not to be supposed that rational men would contract for the delivery of a given amount of current coin or paper currency, in consideration of receiving a lesser amount of the same coin or paper. The obvious meaning of a contract to sell either description of currency at a price named in dollars or fractions, or at so much per cent, is that the price is payable in the other currency. Our courts cannot close their eyes to the fact that the commercial community in which they dwell, and the government under which they live, are constantly engaged in such dealings. The meaning of the contract under consideration cannot be misunderstood, when read in the light of the public events of the time. The parties by a deliberate agreement in writing, signed by both of them, mutually agreed, one that he would deliver and the other that he would receive $10,000 of current funds of the United States at fifteen cents on the dollar, in ten months after the date of the contract. The term, "current funds of the United States," clearly describes those notes which had been issued by the government to meet the emergencies of war, and which Congress had sought to assimilate to money by constituting them a legal tender in payment of debts, and were generally known as United States currency. That the percentage agreed to be paid therefor by the plaintiff was to be payable in coin, is as clear as if stated in those words. It is apparent from the nature and context of the contract. The defendant when entering into it was doubtless wanting in confidence in the ability of the government to maintain itself in the struggle in which it was then engaged, and expected that the paper currency would, in the course of ten months, decline in value to such a degree that it could be obtained at a rate of less than fifteen per cent in coin. Had his expectations been realized he would have been entitled to demand,

and it is to be presumed that he would have demanded of the plaintiff $1,500 in coin, on tendering to him $10,000 of United States currency. The result having been different, and the currency which he contracted to deliver having increased instead of diminishing in its value relatively to coin, it is but just that he should bear the ensuing loss. In the absence of any law prohibiting such contracts, they must be enforced like other executory contracts for the delivery of goods or stocks.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur; CHURCH, Ch. J., not sitting.

Judgment reversed.